# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**YOLANDA M. CARRILLO,**

  **Plaintiff,**

**v.**                **No. 21-cv-0232 SMV**

**KILOLO KIJAKAZI,[1]**
**Acting Commissioner of the Social Security Administration,**

  **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion for Reversal and/or Remand [Doc. 23], filed on January 12, 2022. The Commissioner responded on March 24, 2022. [Doc. 27]. Plaintiff replied on April 4, 2022. [Doc. 28]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the ALJ failed to apply the correct legal standard in evaluating the consultative psychological opinion of Louis Wynne, Ph.D. Accordingly, remand is warranted. The Court declines to pass on Plaintiff's other challenges at this time. The Motion will be granted, and the case will be remanded. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## <u>Standard of Review</u>

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

applied.[2]  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work."   20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on April 19, 2019.  *See* Tr. 12.  She alleged a disability-onset date of May 13, 2015.  *See id.*  Her claim was

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

denied initially and on reconsideration. *See id.* Administrative Law Judge ("ALJ") Jeffrey N. Holappa held a hearing on October 29, 2020. Tr. 12, 31–62. Due to the extraordinary circumstances presented by the coronavirus disease, the hearing was held by telephone. Tr. 12. Plaintiff appeared by telephone with her attorney. Tr. 12, 31–62. The ALJ heard testimony from Plaintiff and vocational expert ("VE") Nicole B. King. Tr. 12, 31–62.

The ALJ issued his unfavorable decision on December 1, 2020. Tr. 24. He found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019. Tr. 15. At step one, he found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 13, 2015, through her date last insured ("DLI") of September 30, 2019. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the right hip, neurocognitive disorder due to traumatic brain injury, and post-traumatic stress disorder. Tr. 16. The ALJ found the following impairments were not severe: irritable bowel syndrome, temporomandibular joint disorder, and alcohol use disorder. *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 16–17. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 18–22. The ALJ found that Plaintiff could perform a limited range of light, unskilled work. Tr. 18. Specifically, he found that through the DLI, Plaintiff:

> had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but she could never climb ladders, ropes, or scaffolds. She was limited to frequent bilateral reaching, handling, fingering, and feeling. [Plaintiff] was further limited to no exposure to unprotected heights or moving mechanical parts. [Plaintiff] was limited to understanding, remembering,

and carrying out simple, routine tasks; making simple work-related decisions; dealing with changes in a routine work setting; maintaining concentration, persistence, and pace for at least two-hour intervals; and occasional interactions with others, including supervisors, coworkers, and the public.

*Id.*

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a travel clerk.  Tr. 22.  Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five.  Tr. 23–24.  He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled.  *Id.*  Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claim.  *Id.*  The Appeals Council denied review on February 19, 2021.  Tr. 1–5.  Plaintiff timely filed the instant action on March 16, 2021.  [Doc. 1].

## Analysis

Plaintiff argues that the ALJ did not "properly consider" the opinion of Dr. Wynne.  [Doc. 23] at 23.  At issue is Dr. Wynne's opinion that Plaintiff was "mildly impaired" in her "ability to *persist at simple work tasks*."  Tr. 688 (emphasis added).

The ALJ must evaluate the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any

other factor tending to support or contradict the opinion.  20 C.F.R. § 404.1520c(c)(1)–(5).  "The most important factors . . . are supportability . . . and consistency."  § 404.1520c(a).

Supportability—the first factor in determining persuasiveness of a medical opinion—examines how closely connected a medical opinion is to the evidence and the medical source's explanations.  "The more relevant the *objective medical evidence* and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be."  § 404.1520c(c)(1) (emphasis added).  "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f).  The regulations explain "signs" as follows:

> Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

§ 404.1502(g).

Consistency—the second factor in determining persuasiveness of a medical opinion—compares a medical opinion to the evidence.  "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be."  § 404.1520c(c)(2).

> [O]ur use of the word "consistent" in the regulations is the same as the plain language and common definition of "consistent."  This includes consideration of factors such as *whether the evidence conflicts with other evidence from other medical sources* and *whether it contains an internal conflict with evidence from the same medical source*.  We acknowledge that the symptom severity of some impairments may fluctuate over time, and we will consider the evidence in the claim that may reflect on this as part of the consistency factor as well.  Thus, the

appropriate level of articulation will necessarily depend on the unique
circumstances of each claim.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5854 (Jan. 18,

2017) (emphases added).

In explaining how persuasive a medical opinion is, each of the ALJ's findings must be

supported by substantial evidence.  "[A]ll the ALJ's required findings must be supported by

substantial evidence, and he must consider all relevant medical evidence in making those

findings."  *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted); *see generally, e.g.,*

*Langley*, 373 F.3d at 1116 (reversing ALJ's decision where, *inter alia*, the ALJ's reasons for

rejecting medical opinions were not or did not appear to be supported by substantial evidence).

Here, the ALJ found Dr. Wynne's opinion to be "somewhat persuasive."  Tr. 22.  However,

he did not make findings on the opinion's supportability or consistency.  *See* Tr. 17–22.  Instead,

he explained that Dr. Wynne had not defined "mild" and found, therefore, that the opinion was

"vague with imprecise language."  *Id.*  The ALJ concluded that Dr. Wynne's definition of "mild"

did not matter because, whatever it meant, Dr. Wynne had not assessed "debilitating deficits."  *Id.*

Even construing it liberally, this rationale does not comport with the regulatory requirement to

make findings on the persuasiveness of a medical opinion based on supportability and consistency.

The error is not harmless because a reasonable adjudicator, applying the correct legal

standard, could have found Dr. Wynne's opinion to be persuasive.  *See Allen v. Barnhart*, 357 F.3d

1140, 1145 (10th Cir. 2004) (holding an error to be harmless in a social security case when the

reviewing court can "confidently say that no reasonable administrative factfinder, following the

correct analysis, could have resolved the factual matter in any other way.").  For example,

Dr. Wynne's assessed mental limitations (mild limitations in the ability to persist at simple tasks

and to concentrate) could be found supported by his diagnosis of "neurocognitive disorder due to traumatic brain injury," Tr. 688, an impairment that the ALJ himself found to be severe at step two, Tr. 16.

Defendant's argument does not change the result.  Defendant's position is that Dr. Wynne's opinion is consistent with the RFC assessment.  Thus, she argues, even if the ALJ erred, Plaintiff was not prejudiced.  [Doc. 27] at 9–11.  Defendant would be correct if Dr. Wynne had assessed a mild limitation in persistence *generally*.  After all, both mild and moderate limitations in mental abilities, such as persistence, can be consistent with unskilled work.  *See, e.g., Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (holding that, under the particular circumstances of that case, the moderate limitation in concentration, persistence, or pace was accounted for in an RFC limitation to unskilled work).  But Dr. Wynne's limitation was more restrictive.  Critically, Dr. Wynne opined that Plaintiff had a mild limitation in the ability to persist *at simple tasks*.  ("Simple tasks" are synonymous with "unskilled" work.[4])  In other words, he assessed a limitation—albeit a mild one—in the ability to persist at *unskilled work*.  Dr. Wynne's opinion is more restrictive than the RFC assessment.

## Conclusion

Remand is necessary for reevaluation of Dr. Wynne's opinion.  The Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Reversal and/or Remand [Doc. 23] be **GRANTED**.  The Commissioner's final

---

[4] *E.g., Vigil*, 805 F.3d at 1204 (equating "simple" work with unskilled work); SSR 96-9p, 1996 SSR LEXIS 6, at *9, 1996 WL 374185, at *9 (mental requirements of unskilled work include "[u]nderstanding, remembering, and carrying out simple instructions"); Program Operations Manual System ("POMS") § DI 25020.010(A)(3) (same).

decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

        **IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**